1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    KEVIN FINLEY,                                No.  2:13-cv-1132-GEB-EFB PS

12                 Plaintiff,

13          v.                                     FINDINGS AND RECOMMENDATIONS

14    CARPENTERS PENSION TRUST FUND
      FOR NORTHERN CALIFORNIA; AND
15    CARPENTER FUNDS
      ADMINISTRATIVE OFFICE FOR
16    NORTHERN CALIFORNIA, INC.,

17                 Defendants.

18

19          This is an action under the Employment Retirement Income Security Act ("ERISA"), 29

20    U.S.C. § 1132(a)(1)(B), in which plaintiff alleges the wrongful denial of disability benefits.

21    Plaintiff, Kevin Finley, alleges that defendants, the Pension Trust Fund for Northern California

22    ("Pension Fund") and the Carpenters Funds Administrative Office for Northern California, Inc.

23    ("Funds Office") are wrongfully withholding pension plan benefits under 29 U.S.C.

24    § 1132(a)(1)(B).[1]  The matter is before the court on cross-motions for summary judgment.  For

25    the following reasons, it is recommended that plaintiff's motion for summary judgment be denied

26    and defendants' motion be granted.

27
            ───────────────────
            [1]  This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to
28    Eastern District of California Local Rule 302(c)(21).  *See* 28 U.S.C. § 636(b)(1).

                                                    1

1   I.      Background

2          Finley's second amended complaint disputes a decision by defendants that he was not

3   working in covered employment for certain periods of time, the result of which was to reduce the

4   amount of his monthly disability benefits.  Specifically, he challenges the denial of what is

5   referred to in the Plan as Future Service Eligibility ("FSE") credits for March through May 1991,

6   March through June 1995, August through September 1997, September 2001 through March

7   2002, and March 2007 through September 2009.[2]  ECF No. 68 ¶ 19; ECF No. 68-1, Ex. 7A-7F.

8          Apart from the benefit calculation issue, plaintiff also challenges a determination of the

9   date on which he became eligible to start receiving his disability pension benefits.  ECF No. 68-1

10  at 69 (Ex. 12).

11  II.     Facts

12         The defendant Pension Fund (hereafter referred to as the "Plan") is an employee benefit

13  plan subject to ERISA.  It is administered by the Funds Office and a Board of Trustees.

14  Declaration of Russ Fairless ISO Defs.' Mot. Summ. J. ("Fairless Decl.") (ECF No. 79) ¶¶ 1, 4.

15  Plaintiff is a retired member of Local 217 of the United Brotherhood of Carpenters and Joiners of

16  America ("Union").  Fairless Decl. ¶ 3.  As a member of the Union, he was able to participate in a

17  pension plan and accumulate pension credits, *see* Fairless Decl. Ex. A (ECF No. 79-1), and he is a

18  participant in the pension Plan.  *Id*. ¶ 3.  The Plan governs a participant's eligibility, accumulation

19  of pension credits and calculation of pension benefit amount, *id*. ¶ 5, Ex. A, and it provides for

20  four types of pensions, including a disability pension.  ECF No. 79-1 at 95.

21  /////

22

23         [2]  The second amended complaint also alleged claims against defendants Mike Knab, Bob
    Alvarado, Bill Feyling, Rigo Lagaurdia, Jay Streets, and Shawn Leonard.  All of these
24  individually named defendants, with the exception of Shawn Leonard, were previously dismissed
    from this action.  ECF Nos. 74, 75.  As the court previously explained, ECF No. 59 at 9, n. 7, the
25  only appropriate defendant in this action is the party (or parties) having authority over the Plan
    benefits.  *Cry v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1206-1207 (9th Cir. 2011); *see*
26  *also Atkinson v. Sinclair Ref. Co.,* 370 U.S. 238, 248 (1962*); Williams v. Pacific Maritime*
    *Association*, 421 F.2d 1287, 1289 (9th Cir. 1970).  Furthermore, as explained below, Leonard
27  must be dismissed for the additional reason that plaintiff has failed to effect service of process on
28  him as required by Fed. R. Civ. P. 4(m).

2

1    In August 2011, plaintiff submitted an application for disability pension benefits.  ECF

2  No. 79 ¶ 7; Second Am. Compl. (ECF No. 68-1) at 13-18.[3]  After a participant submits an

3  application, the participant's account is audited to determine pension eligibility, pension credits,

4  and to calculate the monthly pension benefits.  ECF No. 79 ¶ 8.  Here, when the Pension Fund

5  audited plaintiff's account to confirm his total "eligibility credits" and to calculate his monthly

6  pension benefits, the Pension Fund determined that plaintiff had been credited for certain periods

7  of covered employment for which he was not eligible.  Specifically, it was found that plaintiff's

8  account had received credit for periods of disability during which plaintiff, although not working

9  during those periods, had not been absent from work due to a disability.

10    Accordingly, in September 2011 the Pension Fund notified plaintiff that it removed these

11  FSE credits.  The periods removed include March through May 1991, March through June 1995,

12  August through September 1997, September 2001 through March 2002, and October 2006

13  through December 2008.  *Id*. ¶¶ 10, 11; Fairless Decl. Ex. B (ECF No. 79-2).  Removing these

14  credits resulted in a lower monthly benefit for plaintiff than he would have received with those

15  credits.  The notification explained to plaintiff that additional information was required in order to

16  perfect his claim for FSE credits during each of the periods in question.  *Id*

17    Plaintiff appealed that decision.  He also added a claim that he was entitled to start

18  receiving disability pension benefits in April 2007, and not January 2009, the month for which the

19  Pension Fund began paying him benefits.  Fairless Decl. Ex. C (ECF No. 79-3, at p. 3 of 9); ECF

20  No. 79 ¶ 20.  On June 7, 2012, the Appeals Committee denied plaintiff's appeal.  Fairless Decl.

21  Ex. E (ECF No. 79-5).  This lawsuit followed.

22  /////

23  /////

24  /////

25  /////

26  /////

27

28    [3]  Plaintiff did not file exhibits in support of his motion for summary judgment.  Instead,
his motion cites to documents he previously filed in this action.

1    III.    The Parties' Motions for Summary Judgment

2         A.    Standard

3         Summary judgment is appropriate when there is "no genuine dispute as to any material

4    fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary

5    judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

6    to the determination of the issues in the case, or in which there is insufficient evidence for a jury

7    to determine those facts in favor of the nonmovant.  *Crawford–El v. Britton*, 523 U.S. 574, 600

8    (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50 (1986); *Nw. Motorcycle Ass'n v.*

9    *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471–72 (9th Cir. 1994).  At bottom, a summary judgment

10   motion asks whether the evidence presents a sufficient disagreement to require submission to a

11   jury.

12        The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

13   or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Thus, the rule functions to

14   "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

15   trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

16   (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally,

17   under summary judgment practice, the moving party bears the initial responsibility of presenting

18   the basis for its motion and identifying those portions of the record, together with affidavits, if

19   any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477

20   U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving

21   party meets its burden with a properly supported motion, the burden then shifts to the opposing

22   party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

23   *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

24        A clear focus on where the burden of proof lies as to the factual issue in question is crucial

25   to summary judgment procedures.  Depending on which party bears that burden, the party seeking

26   summary judgment does not necessarily need to submit any evidence of its own.  When the

27   opposing party would have the burden of proof on a dispositive issue at trial, the moving party

28   need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National*

4

1    *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

2    which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U .S. at

3    323–24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

4    issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

5    depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

6    should be entered, after adequate time for discovery and upon motion, against a party who fails to

7    make a showing sufficient to establish the existence of an element essential to that party's case,

8    and on which that party will bear the burden of proof at trial.  *See id*. at 322.  In such a

9    circumstance, summary judgment must be granted, "so long as whatever is before the district

10   court demonstrates that the standard for entry of summary judgment . . . is satisfied."  *Id*. at 323.

11        To defeat summary judgment the opposing party must establish a genuine dispute as to a

12   material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that

13   is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at

14   248 ("Only disputes over facts that might affect the outcome of the suit under the governing law

15   will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is

16   determined by the substantive law applicable for the claim in question.  *Id*.  If the opposing party

17   is unable to produce evidence sufficient to establish a required element of its claim that party fails

18   in opposing summary judgment.  "[A] complete failure of proof concerning an essential element

19   of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S.

20   at 322.

21        Second, the dispute must be genuine.  In determining whether a factual dispute is genuine

22   the court must again focus on which party bears the burden of proof on the factual issue in

23   question.  Where the party opposing summary judgment would bear the burden of proof at trial on

24   the factual issue in dispute, that party must produce evidence sufficient to support its factual

25   claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

26   *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Rather, the opposing party must, by affidavit

27   or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

28   for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

1   demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

2   that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*,

3   477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

4          The court does not determine witness credibility.  It believes the opposing party's

5   evidence, and draws inferences most favorably for the opposing party.  *See id*. at 249, 255;

6   *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

7   proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

8   *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J.,

9   dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at

10  issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th

11  Cir. 1995).  On the other hand, "[w]here the record taken as a whole could not lead a rational trier

12  of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475

13  U.S. at 587 (citation omitted); *Celotex*, 477 U.S. at 323 (if the evidence presented and any

14  reasonable inferences that might be drawn from it could not support a judgment in favor of the

15  opposing party, there is no genuine issue).  Thus, Rule 56 serves to screen cases lacking any

16  genuine dispute over an issue that is determinative of the outcome of the case.

17         Where both parties have moved for summary judgment, the summary judgment standards

18  do not change and the court must evaluate the merits of each motion.  *See Nolan v. Heald*

19  *College*, 551 F.3d 1148, 1154 (9th Cir. 2009) (applying traditional summary judgment standards

20  to cross-motions for summary judgment in ERISA case).

21         B.     Discussion

22         This action proceeds on a claim under 29 U.S.C. § 1132(a)(1)(B).  ECF No. 14 ¶¶ 4, 6.

23  That provision of ERISA permits a plan participant to sue "to recover benefits due to him under

24  the terms of the plan, to enforce his rights as a beneficiary under the terms of the plan, or to

25  clarify his right to future benefits under the terms of the plan." *Miniz v. Amec Constr. Mgmt.*, 623

26  F.3d 1290, 1294 (9th Cir. 2010).  A claim for denial of benefits pursuant to 29 U.S.C.

27  § 1132(a)(1)(B) "is to be reviewed under a de novo standard unless the benefit plan gives the

28  administrator or fiduciary discretionary authority to determine eligibility for benefits or to

1    construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

2    Where the plan gives discretion to administrators, the applicable standard of review is abuse of

3    discretion. *Id*. A plan grants discretion where administrators have the "power to construe

4    disputed or doubtful terms" in the plan. *Id*.

5         Here, the Plan clearly confers discretion. It specifically provides the "Board of Trustees

6    shall, subject to the requirements of law, be the sole judge of the standard of proof required in any

7    case and the application and interpretation of this Plan." Fairless Dec. Ex. A (ECF No. 79-1 at

8    113). Accordingly, the court must review the decision to deny benefits under the abuse of

9    discretion standard.

10         The Ninth Circuit "equate[s] the abuse of discretion standard with 'arbitrary and

11   capricious' review," which means that the Pension Fund's "interpretation of Plan language is

12   entitled to a high level of deference and will not be disturbed unless it is 'not grounded on any

13   reasonable basis.'" *Tapley v. Locals 302 & 612 of the Int'l Union of Operating Eng'rs—Emp'rs*

14   *Constr. Indus. Ret. Plan*, 728 F.3d 1134, 1139 (9th Cir. 2009). An administrator of a plan abuses

15   its discretion if it renders "decisions without any explanation, or construe[s] provisions of the plan

16   in a way that clearly conflicts with the plain language of the plan. *Johnson v. Trustees of W.*

17   *Conf. of Teamsters Pension Trust Fund*, 879 F.2d 351, 654 (9th Cir. 654). Put differently, an

18   administrator's "interpretation of the plan 'will not be disturbed if reasonable." *Conkright v.*

19   *Frommert*, 559 U.S. 506, 521 (2010) (quoting *Firestone*, 489 U.S. at 111). The "interpretation

20   need not be the one this court would have reached, but only an interpretation which has rational

21   justifications." *Tapley*, 728 F.3d at 1139-40.

22         Thus, the court must determine whether defendants reasonably interpreted the language of

23   the pension plan in determining the effective date for plaintiff's disability pension and that

24   plaintiff was not entitled to receive FSE credits during certain absences from work.[4]

25

26         [4] Plaintiff's pleadings are cluttered with extraneous arguments having nothing to do with
     his underlying claims. For instances, he takes issue with the number of hours defense counsel has
27   billed his clients over previous years. ECF No. 76 at 12-16. He also expresses frustration with
     the salaries earned by employees of the Pension Fund. *Id*. at 6-11. The court only addresses
28   plaintiff's arguments that are relevant to his ERISA claims.

1              1.       Applicable Edition of the Pension Plan

2          As a threshold matter, plaintiff appears to contend that defendants have used the wrong

3    version of the Plan in assessing his application for disability benefits.  He argues that defendants

4    "chang[ed] the rules in July 2012 retro to January 2007," and that the "2012 revised rules do not

5    apply."  ECF No. 83 at 2-4.  He further claims that defendants are "invoking rules from the June

6    2012 revised" pension plan.  *Id*. at 7.  Plaintiff does not, however, submit any evidence in support

7    of his position that a 2012 version of the pension plan was used to calculate his benefits.[5]

8    Furthermore, defendants' evidence shows that plaintiff's application was evaluated and his

9    benefits determined by "the rules in effect as of August 2011, when Plaintiff submitted his

10   application for disability retirement, i.e., the Plan rules in effect in the 2007 Edition of the

11   Pension Plan."  ECF No. 88 at 3; *see* Fairless Decl., Ex. A.[6]

12         Next, plaintiff also appears to argue that his claim should have been decided under a

13   January 2001 edition of the Plan.  ECF No. 83 at 3.  The 2007 Edition states that "If you Retired,

14   had a Break in Service or left Covered Employment prior to January 1, 2007, different rules may

15   apply to you."  ECF No. 79-1 at 6.  Although plaintiff is not clear, as far as the court can discern,

16   he contends that the earlier, 2001 version should apply because he last worked in October 2006.

17   *Id*.; *see* ECF No. 71-1 at 1-31.  He is mistaken.

18         The 2007 edition provides that "[e]mployees who *terminated participation* under the Plan

19   prior to January 1, 2007 will have their eligibility for and amounts of benefits determined based

20   upon the Rules and Regulations in effect on the date of termination."  ECF No. 79-1 at 74

21

22         [5]  Neither party has submitted a copy of the 2012 edition.  Defendants submitted a copy of
      the January 2007 edition of the pension plan, which they contend was used to decide plaintiff's
23   claim.  Fairless Decl., ¶ 5 and Ex. A (ECF No. 79 at 2 & 3; ECF No. 79-1).

24         [6]  Plaintiff also appears to dispute whether the version defendants submitted is actually the
      January 2007 edition.  Referring to that exhibit, plaintiff argues that "[s]ince there is no effective
25   date I only have to assume it is the prototype of the 2016 edition of the changes made to the plan
      over the last 8 years."  ECF No. 84 at 3.  Plaintiff has apparently overlooked the cover of the plan
26   submitted by defendants which specifically states "January 2007 Edition."  Fairless Decl. Ex. A
      (ECF No. 79-1 at 2).  Furthermore, the Plan expressly states that "[t]his document sets forth the
27   Rules and Regulations of the Carpenters Pension Trust Fund for Northern California as amended
      effective January 1, 2007."  *Id*. at 74.
28

1    (emphasis added).  Plaintiff confuses termination of employment with termination of coverage

2    under the Plan.  Although plaintiff's last day of work may have been in 2006, the evidence

3    indicates that he did not terminate his participation in the Plan at that time, nor did he terminate

4    his participation prior to January 1, 2007.  Rather, his application specifically requested pension

5    credits for periods when he was out of work due to disability in 2007-2009.  ECF No. 68-1.  And

6    more importantly, he was granted service credit for all of 2007 and 2008.  ECF No. 76 at 17.

7    Simply put, plaintiff's participation under the Plan did not terminate prior to January 1, 2007.

8           Furthermore, as explained below, plaintiff was not eligible to start receiving a disability

9    pension until January 2009, which fell during the period governed by the 2007 version of the

10   Plan.  Accordingly, the January 2007 edition of the pension plan is the version applicable to

11   plaintiff's application for a disability pension.

12                          2.        Date of Eligibility for Disability Benefits

13          Plaintiff argues that the effective date of his eligibility for disability benefits under the

14   Plan should have been April 13, 2007, the date on which he was determined to be disabled by the

15   Social Security Administration ("SSA").  ECF No 76-1 at 12; *see also* ECF No. 68-1 at 64, 69.

16   Defendants disagree, arguing that under the Plan's rules plaintiff's effective date of eligibility was

17   January 1, 2009, the month after plaintiff was entitled to receive disability benefits from the SSA.

18   ECF No. 77 at 12-13.  Thus, the dispute centers on the distinction between the date of onset of

19   disability as determined by the SSA and the date plaintiff was actually entitled to start receiving

20   SSA benefits.  It appears that plaintiff misses this distinction.

21          Although the Plan defines disability by reference to eligibility for Social Security

22   disability benefits,[7] the Plan provides that disability benefits under the Plan "begin after you have

23   been disabled for 6 full months and continue as long as you are eligible for Social Security

24   Disability Benefits."  ECF No. 79-1 at pp. 17 & 96.  Thus, the Plan looks to the *date of eligibility*

25   to receive SSA disability payments and not the *date of onset* set by SSA to establish disability

26

27          [7] "'Totally Disabled' means that you are totally disabled from work of any kind and you
     are receiving a Social Security Disability Benefit or otherwise meet the Social Security

28   Administration's rules for determining total disability."  ECF No. 79-1 at 16; *see also id.* at 95.

1    under the Plan.[8]  Once that disability is established under the Plan, it then requires a waiting

2    period of six months before Plan benefits can be paid.

3          Thus, while there is no dispute that plaintiff was found disabled by the SSA with an onset

4    date of April 13, 2007, his date of eligibility for SSA benefits was December 2008.[9]  ECF No. 79-

5    6 at 2 (SSA award letter stating that although the onset of disability was in April 2007, "monthly

6    benefits will begin December 2008.").  Under the Plan's definition of disability, that is the date

7    plaintiff's disability began.  As explained in the Fairless declaration, the date of entitlement to

8    SSA Disability benefits triggers the Disability Retirement obligations under the Plan.  Further,

9    Section 3.09 of the Plan provides that "Payment of the Disability Pension shall not commence

10   until six full calendar months of disability have elapsed . . . ."  *Id*. at 96.  Thus, plan benefits begin

11   six months after December 2008.  The language of section 3.09 requires a participant to meet the

12   Plan's requirements for disability for six month before pension benefits are paid.  ECF No. 79-1

13   at 95.  That section does not state that plan benefits begin six months after date of onset

14   established by the SSA.  Nor does it alone provide for a retroactivity award to the date argued by

15   plaintiff.

16          Plaintiff also argues that he actually became disabled six months earlier than onset date

17   established by the SSA.  He insists that he became disabled as of October 2006.  ECF No. 83 at 6.

18   He contends that he was disabled due to events that occurred from "May 2006 to September 12,

19   2006 when defendants failed to get me reinstated as foreman after I was demoted in retaliation for

20   5/12/06 ankle injury."[10]  *Id*.  Thus, plaintiff argues that as of April 2007 he had been disabled for

21   six months and therefore he was entitled to start receiving his disability pension at that time.

22

23          [8]  The SSA date of onset can vary significantly from the date of SSA eligibility because of
the 12 month limitation on how far back retroactive SSA payments can be made for claims in

24   which the onset date precedes the date of the SSA application.

25          [9]  Plaintiff's SSA award letter explained that SSA cannot pay benefits any earlier than

26   twelve months before the month of filing for SSA.  With his date of onset and date of application,
the earliest date of eligibility for an SSA payment was December 2008.  *Id.*

27          [10]  Plaintiff does not cite to any evidence in support of his contention that he became

28   totally disabled in October 2006.  *See* ECF No. 83 at 6.

10

1      Again, plaintiff's position appears to rely on the language of section 3.09 in isolation.  It

2  takes no account of other sections of the Plan addressing the qualifications for a disability

3  pension.  "When reviewing interpretive challenges for abuse of discretion, the Court closely reads

4  contested terms and "appl[ies] contract principles derived from state law[s] . . . guided by the

5  policies expressed in ERISA and other federal labor laws."  *Tapley*, 728 F.3d at 1140

6  (modifications in original) (quotations omitted).  This requires a court "to look to the agreement's

7  language in context and construe each provision in a manner consistent with the whole such that

8  none is rendered nugatory."  *Dupree v. Holman Professional Counseling Center*, 572 F.3d 1094,

9  1097 (9th Cir. 2009).

10      As noted above, for a participant to be eligible for a disability pension, he must establish

11  that he is totally disabled as defined under the Plan.  Section 3.08 defines total disability.  It

12  provides that a participant is totally disabled "if the Participant is *entitled to Social Security*

13  *Disability Benefit* in connection with his . . . . Disability Insurance coverage or would have been

14  entitled to such a Disability Benefit except that he lacked the required Social Security quarters of

15  coverage."  ECF No. 79-1 at 95 (emphasis added).  Thus, eligibility for a disability pension

16  requires an individual to be "totally disabled," which in turn requires an individual to demonstrate

17  their entitlement to receive disability benefits from the SSA.  Accordingly, when considering all

18  sections governing eligibility for a disability pension, a Plan Administrator could reasonably

19  conclude, as the Pension Fund did here, that the right to receive social security disability benefits

20  triggers the Pension Funds obligations to make payments on a disability pension pursuant to

21  section 3.09.

22      The evidence before the court establishes that on August 10, 2011, the SSA sent plaintiff a

23  notice of award of disability benefits.  Fairless Decl. Ex. F; ECF No. 68-1 at 11.  It states that

24  plaintiff became disabled on April 13, 2007, but it also states that under the law plaintiff was not

25  *entitled* to receive disability benefits earlier than 12 months before the application filing date.  *Id*.;

26  s*ee* 42 U.S.C. § 423(b) (providing that benefits cannot be claimed any earlier than twelve months

27  before the application is filed); 20 C.F.R. § 404.621 ("you may receive benefits up to 12 months

28  immediately before the month in which your application [for disability benefits] is filed.")

1    Plaintiff did not file his application with the SSA until December 1, 2009, and he was therefore

2    not entitled to receive SSA benefits for any months prior to December 2008.  Fairless Decl. Ex. F;

3    ECF No. 68-1 at 11.[11]

4    Finally, defendants point out that plaintiff was actually paid plan benefits for months

5    earlier than he was entitled.  The Pension Fund began paying plaintiff his disability pension in

6    January 2009, immediately after plaintiff qualified for and began receiving disability benefits

7    from the SSA.  ECF No. 79 ¶ 20.  Although section 3.09 of the Plan required a six month waiting

8    period before plaintiff should have been paid, defendants state that the "Pension Fund exercised

9    its discretion and began paying Disability Retirement benefits to Plaintiff in January 2009 instead

10   of June 2009.  ECF No. 89 at 4.  Defendants further represent that they did not seek to recoup or

11   otherwise offset the payments made before June 2009.  *Id*. at 5.  Whether or not the Plan

12   permitted that exercise of discretion in plaintiff's favor, the defendants have not wrongfully

13   withheld benefits here.

14   The court finds that defendants reasonably concluded that under the Plan plaintiff was not

15   eligible to receive disability pension benefits until after he was entitled to receive social security

16   disability benefits.  Therefore, defendants did not violate the Plan (at least in a manner adverse to

17   plaintiff) by finding that he was entitled to receive disability pension benefits as of January 2009,

18   one month after he was eligible for social security benefits.

19                          3.     Removal of FSE Credits

20   Plaintiff also challenges defendants' removal of his FSE credits from various time periods.

21   The relevance of this dispute is that such credits have an effect on the calculation of benefit

22   amount.

23   A Plan participant has the ability to accumulate eligibility credits and pension credits.  *See*

24   ECF No. 79-1 at 104-115 (Pension Plan, Article 6).  Eligibility credits are used to determine

25   whether a participant is eligible for a pension benefit and pension credits are used to determine

26

27   _____
     [11] Although plaintiff was entitled to receive payments in January 2008, the SSA withheld

28   payments until March 2009 to offset workers' compensation payments that plaintiff had already
     received.  Fairless Decl. Ex. F.

1     the monthly amount of an individual's pension benefit.  Fairless Decl. ¶ 21; *see* ECF No. 79-1 at

2     14, 22, 95, 114-115.

3          Section 6.03(d) governs the accumulation of eligibility credits during the time period at

4     issue here.  A participant's eligibility credits are equal to the sum of the participant's Past Service

5     Eligibility Credits (which are not at issue here)[12] and FSE credits.  *Id*. at 16.  FSE credits are

6     based on the hours a participant works in covered employment.  ECF No. 79 at 16.  Covered

7     employment is defined as "employment performed by an Employee for a Contributing Employer

8     in a job covered by this Plan."  *Id*. at 79 (section 1.14).  A participant earns one FSE credit for

9     1,200 or more hours worked in covered employment in a calendar year.  *Id*. at 107.  Where the

10    participant works less than 1,200 hours in covered employment in a year, he earns one-twelfth of

11    a FSE credit for each 100 hours of covered work, provided that he worked at least 300 hours in

12    the calendar year.  *Id*.  A participant cannot earn more than one FSE credit in any given calendar

13    year.  *Id*. at 17.

14         Section 6.05(b)(2) governs the accumulation of pension credits during the relevant time

15    period.  A participant earns one twelfth of a pension credit for every 100 hours worked in a

16    calendar year, provided that he works at least 300 in that year.  *Id*. at 109.  If a participant works

17    more than 1,200 in a calendar year, he earns one twelfth (1/12th) of a pension credit for each 90

18    hours worked above 1200 hours, up to a maximum of eighteen twelfths (18/12th) Pension Credits

19    in a calendar year.  *Id*.  A participant's monthly pension benefits, for both a regular pension and a

20    disability pension, are calculated by multiplying the pension credits, or fraction of pension

21    credits, earned in a given year by the pension accrual rate for that year,[13] and then taking the sum

22

23
          ────────────────────
24         [12] Past Service Eligibility Credits are earned prior to a participant's contribution date.
      There is no indication that plaintiff ever earned any Past Service Eligibility Credits.  *See* ECF No.
25    68-1 at 127.  Even if he did, there is no dispute over the calculation of Past Service Eligibility
      Credits.

26
          [13] The pension accrual rate, which is given in a dollar amount, for any particular year may
27    vary depending on the effective date of the pension and whether there was a separation from
      covered employment.  *See* ECF No. 79-1 at 86-94 (Section 3.03)
28

for all years.[14]

However, eligibility credits and pension credits are not based solely on the number of hours a participant works.  Of particular significance here, the Plan also allows a participant to earn eligibility credits and pension credits for certain absences from covered employment. Section 6.04 of the pension plan provides that a participant will be granted FSE credits for periods of absence from covered employment due to disability "for [a] period in which California State Disability Insurance (SDI) benefits were paid" or "for [a] period for which Workers' Compensation temporary disability benefits . . . were paid . . . ."  *Id*. at 107-108.  To secure FSE credits due to a period of disability, "a Participant must furnish in writing such information and proof concerning such disability as the Board may in its sole discretion determine."  *Id*. at 108. If a participant is granted eligibility credits for an absence from covered employment due to disability, such eligibility credits will be counted towards the participant's pension credits.  ECF No. 79-1 at 24.

In determining whether to grant FSE credits during absences from covered employment due to disability, the Pension Fund's standard procedure is to grant FSE credits when a participant provides evidence of receipt of SDI or workers' compensation benefits within 30 days of the last day worked.  Fairless Decl. ¶ 13.  Where a participant received SDI or workers' compensation benefits outside the 30-days window, the Pension Fund will consider additional information explaining why the participant's absence from work was due to disability.  *Id*.  Where the participant fails to provide such information, "the Participant is unlikely to receive the requested FSE Credit."  *Id*.

Here, plaintiff claims that he was erroneously denied FSE credits for March through May 1991, March through June 1995, August through September 1997, September 2001 through March 2002, and March 2007 through September 2009.  ECF No. 68 ¶ 19; ECF No. 68-1, Ex.

---

[14]  For work performed after January 1, 2007, pension benefits are not calculated by using pension credits.  Instead, Percentage of Contribution Benefit Credit, which are based on contribution made to the Pension Fund on the participant's behalf by employers, are used to determine the amount of monthly benefits a participant earned in any given year.

14

1    7A-7F.[15]

2          In December 2011, the Pension Fund notified plaintiff that it had removed FSE credits

3    that were previously credited for these time periods.  Fairless Decl. Ex B.  Plaintiff was notified

4    that the Pension Fund needed additional information for each period in which credits were

5    removed.  Specifically, he was informed that: "In order to perfect your claim for benefits you

6    must provide the Fund with documentation that you were working in covered employment,

7    immediately prior to the onset of your disability."  ECF No. 79-2 at 4, 9, 15, 20 (Ex. B).  Deputy

8    Administrator Fairless states in his declaration that the FSE credits at issue were removed

9    "because the information contained in Finley's file was not sufficient to prove that Plaintiff was

10   absent from covered work during these periods because of a disability."  *Id*. ¶ 14.

11          Plaintiff has not demonstrated that the Pension Fund erred when it found that he had not

12   properly supported his request for FSE credits during the periods at issue.  Instead, plaintiff's

13   pleadings are filled with conclusory statements that do not contradict defendants' position.  For

14   instance, plaintiff argues that defendants "flat out lie" that he failed to provide evidence that he

15   was collecting SDI, and that the defendants removed "pension credits under false pretenses."

16   ECF No. 83 at 4.  Hyperbole is not a substitute for evidence.  While plaintiff does submit

17   evidence demonstrating that he received SDI during the periods at issue, he fails to proffer

18   evidence indicating that prior to receiving SDI he was working in covered employment and that

19   he left employment due to a qualifying disability under the Plan.

20          As for the period of March 1, 1991 through May 29, 1991, plaintiff cites to a "Payment

21   History Inquiry" (ECF No. 68-1 at 56) to support his position that he was entitled to receive FSE

22   credits during this time.  ECF No. 83 at 9.  This evidence shows that plaintiff was receiving SDI

23   from March 1, 1991 through May 29, 1991.  However, plaintiff fails to cite to any evidence

24   indicating that he was working in covered employment immediately prior to this period.

25   /////

26   _____

27          [15]  Plaintiff's operative complaint included an exhibit indicating that FSE credits were
     removed for the period of May 13, 2006 through July 9, 2006 because they were erroneously
     granted twice.  ECF No. 68-1 at 32-33 (Ex. 7A).  Plaintiff does not challenge the removal of these
28   FSE credits.

1        The record demonstrates that plaintiff was not working in covered employment prior to

2   receiving SDI on March 1, 1991.  In support of his appeal of the decision removing his FSE

3   credits, plaintiff submitted a letter to the Appeals Committee.  Fairless Decl. Ex. C (ECF No. 79-

4   3).  Plaintiff explained in this letter why he believed he was entitled to FSE credits for the periods

5   in which the credits had been removed.  *Id*.  As for the March through May 1991 period, plaintiff

6   provided the following explanation regarding his absence from employment: "3/1/91 to 5/29/91 I

7   worked for Homer Olsen for 5 days and was laid off January 91 because the other journeyman

8   they sent out with me did not speak any English and we did not work well together as we could

9   not communicate . . . . We were laid off after 40 hours."  *Id*. at 7.

10       Thus, not only does the evidence establish that plaintiff was not working in covered

11   employment 30 days prior to receiving SDI in March 1991, but it demonstrates that plaintiff's

12   employment terminated due to circumstances unrelated to a disability.  As plaintiff was not absent

13   from covered employment due to a disability, as required by section 6.04 of the Plan, he was not

14   entitled to receive FSE credits for this non-working period.

15       The same is true for the periods covering March through June 1995 and August through

16   September 1997.  Plaintiff received SDI from April 20, 1995 through June 25, 1995.  ECF No.

17   68-1 at 52.  However, in his letter to the Appeals Committee plaintiff explained that he "was

18   working for Pfeiffer Construction until January 95 when [he] was laid off."  ECF No. 79-3 at 7.

19   He further states that he was "having shoulder pain from bone spurs and had decompression

20   surgery [in] March 1995."  Again, plaintiff admitted to being laid off several months prior to the

21   date he started receiving SDI.  He does not cite to any evidence demonstrating that he was laid off

22   due to disability.  Although he complained of experiencing shoulder pain and bone spurs, there is

23   no evidence that these impairments caused him to leave covered employment.

24       As for the August 11, 1997 through September 22, 1997 period, plaintiff's evidence

25   indicates that he was receiving SDI payments in September 1997.  ECF No. 68-1 at 48.  However,

26   plaintiff again conceded that he was not absent from covered employment due to a disability.  His

27   appeal letter provided that: "I worked for Woodbourn construction until June 97[.]  I was waiting

28   to go with them to the Burlingame Library but by the end of June they said they did not need me

16

1    . . . . I moved to Sacramento and put my name on their out of work list [in] July 1997.  I broke 3

2    toes in August water skiing and went to work September 1997 for McCarthy @ Mercy San Juan

3    Hospital."  ECF No. 79-3 at 6-7.  Again, plaintiff was absent from covered employment due to

4    circumstances unrelated to disability.  Although he subsequently injured himself water skiing, and

5    as a result collected SDI, he has failed to provide any evidence demonstrating that his absence

6    was due to a disability.

7          Plaintiff also argues that defendants erroneously denied FSE credits for a period from

8    September 13, 2001 through March 4, 2002.  ECF No. 83 at 10.  Like the other notices plaintiff

9    received, the notice for this time period provided that FSE credits were being removed because

10   plaintiff had failed to show that he was working in covered employment prior to his disability.

11   Specifically, it noted that the Pension Fund's records showed that plaintiff worked 72 hours in

12   January 2001, but that his disability did not begin until September 2001.  Accordingly, plaintiff

13   was informed that he needed to provide additional documentation to perfect his claim for FSE

14   credits during this period.  *Id.*

15         In his appeal letter, plaintiff advised the Appeals Committee that he already "supplied

16   records submitted back in 2001 showing the dates of SDI paid in 2001 starting 1/24/01 ending

17   3/3/02 (I included state disability history for 2001-2002.)"  ECF No. 79-3.  The SDI payment

18   history plaintiff submitted demonstrates that plaintiff started receiving SDI on January 24, 2001.

19   ECF No. 68-1 at 42; ECF No. 79-2 at 22.  He continued to receive SDI through September 13,

20   2001.  ECF No. 68-1 at 42-43; ECF No. 79-2 at 22-23.  Plaintiff, however, did not receive SDI

21   between September 14, 2001, and October 3, 2001.  ECF No. 68-1 at 43; ECF No. 79-2 at 23.  He

22   resumed receiving SDI on October 4, 2001, and continued to receive SDI until March 3, 2002.

23   ECF No. 68-1 at 43-44; ECF No. 79-2 at 23-24.

24         Defendants argue that without documentation indicating why payments ceased on

25   September 14, 2001, they were unable to determine whether plaintiff was entitled to FSE credits

26   after that date.  The court finds that the Pension Fund's denial of FSE credits was based on a

27   reasonable interpretation of the evidence and pension rules.  Under the Plan, it was plaintiff's

28   responsibility to submit evidence demonstrating he was entitled to those credits.  ECF No. 79-1 at

1    108.  Because of the break in payments in September 2001, it is unclear whether all of plaintiff's

2    SDI payments from January 2001 through March 2002 were due to the same disability.  The

3    notification removing FSE credits informed plaintiff that his documentation established that his

4    disability began in September 2001, but that he last worked in January 2001.  Plaintiff did not

5    submit any documentation indicating that the receipt of SDI after September 2001 was due to an

6    injury sustained in January, nor did he provide any explanation for the two week gap in SDI

7    benefits.  Given plaintiff's obligation to "furnish in writing such information and proof

8    concerning such disability as the Board may in its sole discretion determine," the court cannot

9    find that the Pension Fund misapplied its rules in denying plaintiff FSE benefits for this time

10   period.

11          Lastly, plaintiff's second amended complaint alleges that defendants wrongfully removed

12   FSE credits from October 15, 2006 through September 2009.  ECF No. 68-1 at 35-38.  That issue

13   is moot.  During the pendency of this action, the Pension Fund reviewed plaintiff's pension file

14   and concluded that plaintiff was indeed entitled to FSE credits for October 15, 2006 through

15   December 2008, the month before the effective date of plaintiff's disability pension.

16   Accordingly, in "July 2014, the Pension Fund adjusted Plaintiff's pension account to include the

17   FSE Credits associated with the October 2006 through December 2008 time period, and remitted

18   a check to Plaintiff representing the retroactive pension payment related to this time period."  *Id*.

19          Plaintiff does not dispute that the Pension Fund has provided him FSE credits for this time

20   period.  ECF No. 76 at 3-4; *see also* ECF No. 68-1 at 123-126 (reflecting an adjustment of FSE

21   credits and a check to plaintiff dated July 3, 2014).  However, plaintiff contends that "the math

22   does not add up hour wise since" the added FSE credits only raised his monthly pension

23   payments by $318.  ECF No. 76 at 4.  Plaintiff, however, does not provide a specific explanation

24   for why he believes benefits were miscalculated for this period.  Instead, he states "I will work on

25   the math and respond after Defense counsel addresses this matter."  *Id*.  Yet plaintiff does not

26   provide any evidence supporting his contention that his benefits were miscalculated for this

27   period, nor does he cite to any rules from the pension plan to support his position.

28   /////

1     Thus, defendants did not abuse their discretion in removing FSE credits from the time

2   periods discussed above.  Accordingly, defendants are entitled to summary judgment on the

3   claim, and plaintiff's motion for summary judgment must be denied.

4   IV.     Defendant Shawn Leonard

5         The operative complaint names Shawn Leonard as a defendant.  To date, Leonard has not

6   appeared in this action and there is no indication from the docket that he was ever served.  Rule

7   4(m) provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the

8   court—on motion or on its own after notice to the plaintiff-must dismiss the action without

9   prejudice against the defendant or order that service be made within a specified time."  Here,

10   there is no point in directing that service be made.

11         Plaintiff provides no information as to why Leonard is an appropriate defendant in this

12   ERISA action.  Plaintiff previously confirmed that he brought this action to challenge the removal

13   of his pension credits pursuant to section 29 U.S.C. § 1132(a)(1)(B), and the operative complaint

14   is devoid of any allegations indicating that Leonard played any part in calculating his disability

15   pension.  The court previously found that the Pension Fund and Fund Office were the only proper

16   defendants for plaintiff's section 1132(a)(1)(B) claim.  Furthermore, for the reasons set out above,

17   plaintiff's ERISA claims fail on the merits.

18         Accordingly, the court finds that defendant Shawn Leonard should be dismissed pursuant

19   to Rule 4(m) based on plaintiff's failure to timely serve this defendant.

20   V.     Conclusion

21         Accordingly, it is hereby RECOMMENDED that:

22         1. Plaintiff's motion for summary judgment (ECF No. 76) be denied;

23         2. The Pension Fund and Fund Office's cross-motion for summary judgment (ECF No.

24   77) be granted;

25         3. The Clerk be directed to enter judgment in the Pension Fund and Fund Office's favor;

26         4. Defendant Shawn Leonard be dismissed from this action due to plaintiff's failure to

27   effect service of process in the time prescribed by Rule 4(m); and

28   /////

1        5.  The Clerk be directed to close the case.

2        These findings and recommendations are submitted to the United States District Judge

3   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

4   after being served with these findings and recommendations, any party may file written

5   objections with the court and serve a copy on all parties.  Such a document should be captioned

6   "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

7   within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

8   *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

9   DATED:  March 17, 2016.

10   

          EDMUND F. BRENNAN

11            UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28